IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KENNETH KING and BEN KENNEDY<br>*Plaintiffs*, | §<br>§<br>§ | |
| V. | § | CIVIL ACTION NO. 4:21-CV-1005 |
| | §<br>§ | |
| TEXAS A&M ENGINEERING<br>EXTENSION SERVICE<br>*Defendant* | §<br>§<br>§ | |

## DEFENDANT'S MOTION TO DISMISS

TO THE HONORABLE AMOS L. MAZZANT, III:

NOW COMES Defendant the Texas A&M Engineering Extension Service ("TEEX"), by and through the undersigned Assistant Attorney General, and files its Motion to Dismiss, and respectfully shows the Court as follows:

## I.
## INTRODUCTION

Kenneth King and Ben Kennedy ("Plaintiffs") filed a Complaint on December 29, 2021. (Doc. 1). Plaintiffs allege that TEEX, as Plaintiffs' employer, violated the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act, and the Family Medical Leave Act (FMLA) when TEEX terminated their employment in October of 2020.

Plaintiff's claims must be dismissed because:

1. Plaintiffs filed their complaint in the wrong venue;

2. Plaintiffs' claims are barred by Eleventh Amendment Immunity; and

3. Plaintiffs fail to state a claim upon which relief may be granted.

## II.
## STANDARD OF REVIEW

A.  **Motion to Dismiss under Federal Rule 12(b)(3)**

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C § 1406(a).  Venue is "wrong" or "improper" when it does not satisfy the requirements of 28 U.S.C §1391, which governs venue in all civil actions brought in federal district courts.  *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55, 134 S. Ct. 568, 577, 187 L. Ed. 2d 487 (2013).  The case must fall within one of 28 U.S.C. §1391(b)'s stated categories. If it does not, then it must be dismissed or transferred under 28 U.S.C. §1406(a). *Id.* A civil action may be brought in (1) a judicial district where any defendant resides or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. §1391(b).  Only if neither of these applies can a case be brought in a different district where the defendant is subject to personal jurisdiction. *Id*.  The court may transfer the cases to the appropriate venue, if such transfer would be in the interests of justice. 28 U.S.C. §1406(a).

"There is a split of authority among federal courts and in the Fifth Circuit with regard to which party bears the burden of establishing venue on a Rule 12(b)(3) motion to dismiss for improper venue." *Lawson v. United States Dep't of Just.*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021), quoting *Victory Renewables, LLC v. Energy Trading Co., LLC*, No. 3:18-cv-00456-L (BT), 2019 WL 2539209, at *3 (N.D. Tex. Feb. 8, 2019), *report and recommendation adopted sub nom. Victory Renewables, LLC v. Energy Trading Co., LLC*, No. 3:18-CV-456-L, 2019 WL 2540738 (N.D. Tex. Mar. 6, 2019). "It appears, however, that once a defendant has moved to dismiss based

on improper venue, the majority of courts place the burden of establishing venue on the plaintiff." *Lawson*, 527 F. Supp. 3d at 896 (citations omitted); see also *Sada v. Multimatic, Inc.*, No. 2:04-CV-110 (DF), 2005 WL 8160773, at *3 (E.D. Tex. May 17, 2005) ("under the majority view, the standard of review for Rule 12(b)(3) motions to dismiss requires that once a defendant has raised the improper venue issue by motion, the burden of sustaining venue rests with the plaintiff"). "Further, as at least one court has noted, '[t]his approach may be considered the better view because it is consistent with the plaintiff's threshold obligation to show that the case belongs in the particular district court in which suit has been instituted.' " *Lawson*, at 896, citing *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 473 n.2 (W.D. Tex. 2016) (citing 14D Charles Alan Wright, et al., Federal Practice & Procedure § 3826 (4th ed. 2013)) (internal quotation marks omitted); see also *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013) (same).

**B.     Motion to Dismiss under Federal Rule 12(b)(1) and (6)**

A complaint must be dismissed if the court lacks subject matter jurisdiction over the plaintiff's claim, FED. R. CIV. P. 12(b)(1), and if the plaintiff fails to state a claim upon which relief may be granted, FED. R. CIV. P. 12(b)(6). Rule 12(b)(3) requires the dismissal of the case when venue is "wrong" or "improper," but the Court may choose to transfer the case in the interests of justice under U.S.C. §1406(a).

A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under rule 12(b)(6). *See Home Builders Assoc. of Mississippi, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir.2005); *see also Iqbal*, 129 S.Ct. at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### III.
### ARGUMENT AND AUTHORITIES

**A.   Improper Venue**

28 U.S.C. §1391 establishes proper venue in federal courts. A civil action may be brought in the district where the defendant resides, a district in which a substantial part of the events or omissions giving rise to the claim occurred, or if neither applies, a judicial district which has personal jurisdiction over the defendant. 28 U.S.C.A. § 1391. Here, Plaintiffs failed to meet their burden to allege facts to demonstrate that proper venue is in the Eastern District of Texas, because the proper venue is the Southern District of Texas.

**1. The Defendant, TEEX, resides in the Southern District of Texas**

Defendant TEEX is a part of the Texas A&M University System. *See* TEX. EDUC. CODE § 88.001(5). TEEX is located in the city of College Station in Brazos County (Doc. 1, ¶ 3), in the Southern District of Texas. *See Am. Traffic Sols., Inc. v. B&W Sensors LLC*, No. 1:12-CV-504, 2013 WL 12138770, at *1 (E.D. Tex. Jan. 14, 2013) (TTI is part of Texas A&M University and is located in College Station, Texas. College Station is in the Southern District of Texas").

**2. A substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas**

While each Regional Training Manager resides in his or her own region, the management decisions which gave rise to the claims in this suit occurred in Brazos County. As a result, the vast

4

majority of any records regarding employment decisions would be in the Southern District of Texas.  Moreover, one of the two plaintiffs (Ben Kennedy) resides in Brazos County, in the Southern District of Texas.  (Doc. 1, ¶ 2).  Kennedy came into the office in College Station where the decision to terminate his employment was communicated to him.  (Doc. 1, ¶¶ 15-16).  No "substantial part" of this litigation occurred in the Eastern District of Texas.

**B.      Plaintiffs' claims are barred by the Eleventh Amendment**

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)).

It is well-settled that the Eleventh Amendment deprives a federal court of jurisdiction to hear a suit against the State of Texas or any of its agencies (such as TEEX), regardless of the relief sought, unless sovereign immunity is expressly waived.  *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-02 (1984).   The Eleventh Amendment codified the sovereign immunity of the states.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).

The Texas A&M Engineering Extension Service is clearly a state agency, as a component institution of the Texas A&M University System. *See* TEX. EDUC. CODE § 88.001(5) ("The agencies and services of the Texas A&M University System are…. (5) the Texas A&M Engineering Extension Service, established by action of the board of directors"; and § 61.003(6) (defining "other agency of higher education" to include, among others, the "Texas A&M Engineering Extension Service").  As such, TEEX enjoys the same Eleventh Amendment

immunity as the State of Texas itself.  *See, e.g., Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 595 (5th Cir.), cert. denied, 142 S. Ct. 216, 211 L. Ed. 2d 93 (2021) ("Texas A&M is an agency of the State of Texas, so a suit against the former is a suit against the latter."), *citing Moore v. La. Bd. Of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).; *see also Texas Eng'g Extension Serv. v. Gifford*, No. 10-11-00242-CV, 2012 WL 851742, at *4 (Tex. App. Mar. 14, 2012) (dismissing claims against TEEX because of sovereign immunity as a state agency).

1. **FMLA Claims**

Plaintiffs' FMLA claims involve their own medical conditions, rather than those of any other person.  (Doc. 1, ¶12, 15).  Because of this, Plaintiffs' claims fall under the self-care provision of the FMLA. 29 U.S.C.§ 2612(a)(1)(D) (providing FMLA leave for Entitlement to leave "(b)ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.").

Congress has not abrogated states' sovereign immunity with respect to the self-care provision of the FMLA, and "states may still assert an Eleventh Amendment immunity defense against claims based on that provision."  *Bryant v. Texas Dept. of Aging and Disability Services*, 781 F. 3d 764, 769 (5th Cir. 2015), citing *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 321 (5th Cir.2008); *see also Alfred v. Harris County Hospital District*, 666 Fed. Appx. 349 (5th Cir. 2016) (holding "a State enjoys sovereign immunity from suit for an FMLA claim for retaliation based on the self-care provision"), citing *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 132 S.Ct. 1327, 1333, 182 L.Ed.2d 296 (2012).  Because TEEX is immune from Plaintiff's FMLA claims under sovereign immunity via the Eleventh Amendment, those claims must be dismissed for lack of subject matter jurisdiction as a matter of law, pursuant to FED. R. CIV. P. 12(b)(1).

### 2. ADA Claims

Plaintiffs bring employment claims that they allege violate the Americans with Disabilities Act. (Doc. 1, ¶¶ 50-60). "Title I is the subchapter of the ADA that prohibits employment discrimination." *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 426 (5th Cir. 2016). It has long been established that, as a matter of law, the Eleventh Amendment bars claims against a state or its officials brought pursuant to Title I of the ADA. *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (holding that title I of the ADA did not validly abrogate state sovereign immunity pursuant to Section Five of the Fourteenth Amendment); *see also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 & n. 7 (5th Cir.2002) (same). It is undisputed that Plaintiffs bring allegations of employment discrimination and retaliation against their former employer the Texas A&M Engineering Extension Service. (Doc. 1 ¶¶ 16, 25, 53, 56). TEEX is a member of the Texas A&M University System, an arm of the State of Texas, enjoying immunity under the Eleventh Amendment. As a result, the Eleventh Amendment bars Plaintiffs' ADA claims.

### 3. ADEA Claims

Similarly, "neither Congress nor Texas have waived Texas's sovereign immunity from ADEA claims." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016), citing *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 Fed.Appx. 391, 395 (5th Cir. 2007); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) ("[I]n the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals").

### D. Claims under the Texas Labor Code

Finally, Plaintiffs bring claims of age and disability discrimination under Chapter 21 of the Texas Labor Code. (Doc. 1, ¶¶ 71-95). Chapter 21 of the Texas Labor Code was formerly known

as the Texas Commission on Human Rights Act (the "TCHRA").  *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 437 (5th Cir. 2012).  Plaintiffs may not bring these claims in federal court.

"[A]lthough the TCHRA waives Texas's immunity from suits in state court, it does not do so in federal court." *Pequeno v. Univ. of Texas at Brownsville*, 718 F. App'x 237, 241 (5th Cir. 2018), citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002); *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 Fed.Appx. at 394 (holding that none of the discrimination provisions of the Texas Labor Code [§§ 21.005, 21.201(a), 21.100, 21.204(b), and 21.211] contains the requisite "clear declaration" of consent by Texas to be sued); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 120; *Jackson v. Texas S. Univ.*, 997 F.Supp.2d 613, 624, 625 (S.D.Tex.2014).

**B.    Plaintiffs Fail to State a Claim for Which Relief May Be Granted**

Plaintiffs do not state a claim against TEEX for which relief may be granted. In this instance, Plaintiffs' allegations are purely conclusory and inadequate "to raise a right to relief above the speculative level."  *Iqbal*, 129 S.Ct. at 1949.  Accordingly, their claims must be dismissed, pursuant to FED. R. CIV. P. 12(b)(6).

**1.    FMLA Claims**

Plaintiffs have not alleged any facts to support a *prima facie* case against TEEX under either an FMLA interference or a retaliation theory of liability. Because Plaintiffs do not allege facts to support a *prima facie* claim under either theory, because of this, Plaintiffs FMLA claims should be dismissed, pursuant to FED. R. CIV. P. 12(b)(6).

**a.  Interference**

To the extent that Plaintiffs intended to bring an interference claim, such a claim must be dismissed for failure to state a claim on which relief can be granted.  "To establish a *prima facie*

interference case, a plaintiffs must show that (1) they were eligible employees, (2) the defendant was an employer subject to the FMLA's requirements, (3) Plaintiffs were entitled to leave, (4) They gave proper notice of her intention to take FMLA leave, and (5) the defendant denied them the benefits to which she was entitled under the FMLA." *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 Fed.Appx. 312, 316 (5th Cir. 2013) (unpublished) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)); *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668 (E.D. La. 2014).

Plaintiffs have not identified facts from which this Court could conclude that they were denied FMLA benefits. Instead, Plaintiffs judicially admit that they were granted leave, and one had completed his leave. (Doc. 1, ¶ 23). Plaintiffs make the conclusory assertion that they "were subject to harassment while on medical leave"," but identify no specific factual allegations from which the court could reach that conclusion. (Doc. 1, ¶ 24). The lawsuit is wholly silent as to what actions the Plaintiffs consider "harassment." (Doc. 1). At most, according to the Complaint, Kennedy received a single phone call while working from home. (Doc. 1, ¶ 15, 24). Courts are clear that not all contact made from an employer to an employee during medical leave constitutes harassment. ("[A] limited number of phone calls cannot reasonably be considered as interfering with an employee's FMLA leave, and there was thus no violation of a clearly established right." *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)).

    b. **Retaliation**

To establish a *prima facie* case for FMLA retaliation, Plaintiffs King and Kennedy must show that (1) they were protected under the FMLA, (2) they suffered an adverse employment action, and (3) they were either was treated less favorably than a similarly situated employee who had not requested leave, or the adverse decision was made because they took FMLA leave." *Lanier*, 527 Fed. Appx. at 317, citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768

(5th Cir. 2001). In other words, "there is a causal link between the protected activity and the discharge." *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (internal quotations, citations omitted); *see also* 29 U.S.C. § 2615(a)(2). Here, Plaintiffs have not identified facts which suggest a causal link between their lay-offs and their FMLA leave. While they have identified other Regional Training Managers (Doc. 1, ¶ 21), they fail to allege any facts which suggest that Plaintiffs were treated less favorably than these individuals BECAUSE of taking FMLA leave. Moreover, Plaintiffs admit that all of this occurred during the COVID-19 pandemic (Doc. 1, § 13) during which TEEX underwent a Reduction in Force (RIF). (Doc. 1, § 16).

### 2. ADA Claims

Plaintiffs have not alleged any facts to support a *prima facie* case against TEEX under either an ADA discrimination or a retaliation theory of liability. Further, Plaintiff's pleadings demonstrate that they cannot prove a *prima facie* claim. Accordingly, Plaintiff's claims arising under the ADA should be dismissed, pursuant to FED. R. CIV. P. 12(b)(6).

#### a. Discrimination

To establish a *prima facie* case of ADA discrimination, a plaintiff must show "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). To establish that a plaintiff is qualified for a job, the plaintiff must show he could either perform the "essential functions" of the job in spite of the disability or that "a reasonable accommodation" of the disability would have enabled the plaintiff to perform the essential functions of the job. *Id.*

The term "essential functions" means the fundamental job duties of the employment position; and consideration must be given to the employer's judgment of what functions of a job

are essential. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(1). An employee who is unable to perform the essential functions of her job due to her medical condition is not a "qualified individual with a disability." *See, e.g., Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 321 (5th Cir. 2008). "[T]he ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the workplace based on the same performance standards and requirements that employers expect of persons who are not disabled." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 808 (5th Cir.1997), *cert. denied*, 522 U.S. 1115, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998) (quoting 29 C.F.R. § 1630, App. Background (1996)).

Here, Plaintiffs claim to have been terminated based on disability or perceived disability. However, they fail to allege facts sufficient to conclude either has a disability as defined in Title I of the ADA. Because Plaintiffs have failed to allege that they have physical or mental impairments that substantially limit one or more major life activities, it necessarily precludes the conclusion that they were discriminated against for unalleged disabilities. While both plaintiffs took medical leave, it is not alleged why such medical leave would result in a disability or a perceived disability.

Further, the plaintiff bears the burden of suggesting a reasonable accommodation to his employer. *Harville v. Texas A&M Univ.*, 833 F. Supp. 2d 645, 660-61 (S.D. Tex. 2011), citing *Taylor v. Principal Financial Group*, 93 F.3d 155, 165-66 (5th Cir. 1996). The ADA does not require an employer to eliminate or reallocate essential functions of a position in order to provide accommodation. *See Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 3 F.3d 922, 925 (5th Cir.1993). "An accommodation that does not permit an employee to perform essential job functions cannot be considered reasonable." *Cortez v. Raytheon Co.*, 663 F.Supp.2d 514, 522 (N.D. Tex. 2009).

Plaintiffs' pleadings conclusively prove that they were given accommodations and were performing their jobs. Kennedy was allowed to work from home while recovering from surgery. (Doc. 1, § 15). Additionally, Kennedy was excused from deployment with first responders because of his medical risk category. (Doc. 1, §§ 17-18). King requested and received medical leaves of absence. (Doc. 1, § 12). King was also excused from travel requirements because of his medical risk category. (Doc. 1, § 13). King and Kennedy sought and received accommodations at least six months (at least as early as March 2020) before the RIF was communicated to them (in September of 2020. (Doc. 1, §§ 13, 17-18, 11, and 16). Plaintiffs do not allege that they sought and were denied any accommodation. Again, Plaintiffs fail to state a *prima facie* case of ADA discrimination.

### b. Retaliation

To show an unlawful retaliation, a plaintiff must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. *Seaman v. CSPH, Inc*., 179 F.3d 297, 301 (5th Cir. 1999).

Protected activity under the ADA is commonly a request for accommodation. ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity. *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008) (internal citations omitted). Plaintiffs' protected activity is not specified, but it is clear they were accommodated for at least six months before the RIF. (Doc. 1, §§ 13, 17-18, 11, and 16). There is no temporal proximity to suggest that there was any connection between the request for accommodation and the termination of employment. Cases accepting temporal proximity between an employer's knowledge of the protected activity and an adverse employment action as sufficient

evidence uniformly hold that the temporal proximity must be "very close." S*ee Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that temporal proximity must be "very close"); *see also Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (C.A.10 1997) (3–month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (C.A.7 1992) (4–month period insufficient).  If 3-4 months are insufficiently close, then the (at minimum) six months between Plaintiffs seeking accommodations and their termination are too remote, as a matter of law, to support causation.

In the event that Plaintiffs later suggest that their protected activity was the filing of charges of discrimination with the EEOC, that also cannot form the basis of a retaliation claim in this case. Plaintiffs filed their EEOC claims after the received termination letters, ruling out the possibility that the termination was retaliation for the EEOC complaint. (Doc. 1, ¶¶ 59-60). Plaintiffs have failed to state a claim upon which relief can be granted.

### 3. ADEA claims

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must prove four elements: (1) he is a member of a protected class; (2) he was qualified for the position that he held; (3) he was discharged; and (4) after his discharge was replaced with a person who is not a member of the protected class. *Tiemeyer v. Quality Pub., Inc.,* 144 F. Supp. 2d 727, 732 (S.D. Tex. 2001) *quoting Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000).  In other words, an ADEA plaintiff must show that his age was the but-for cause of his or her employer's adverse action. *Salazar v. Lubbock Cnty. Hosp. Dist*., 982 F.3d 386, 389 (5th Cir. 2020) (citation omitted).

Here, Plaintiffs cannot prove a *prima facie* case of discrimination as neither King nor Kennedy allege that they were replaced. Moreover, they cannot succeed in demonstrating age as a

"but-for causation" because even Plaintiffs do not believe that, having also alleges that they were terminated based on disabilities or FMLA leave.

4. **Claims under the Texas Labor Code**

For the reasons proffered supra, Plaintiffs fail to state a claim under the Texas Labor Code for which relief can be granted.

### IV.
### CONCLUSION

This Court should dismiss Plaintiff's lawsuit as described hereinabove. IF this case is not dismissed based on improper venue, then it should be transferred the Southern District of Texas. The Texas A&M Engineering Extension Service has immunity from Plaintiffs' claims and Plaintiffs have failed to state a claim on which relief may be granted. Defendant the Texas A&M Engineering Extension Service prays that Plaintiffs take nothing by their suit.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division

*/s/ Scot M. Graydon*
SCOT M. GRAYDON
Assistant Attorney General
Texas Bar No. 24002175
OFFICE OF THE ATTORNEY GENERAL

P.O. Box 12548, Capitol Station<br>
Austin, Texas 78711-2548<br>
(512) 463-2120 / Fax (512) 320-0667<br>
Scot.Graydon@oag.texas.gov

*ATTORNEYS FOR THE TEXAS A&M ENGINEERING EXTENSION SERVICE*

## CERTIFICATE OF SERVICE

I certify that a copy of the above *Defendant's Motion to Dismiss* was served on the **24th day of January, 2022**, upon all parties via the EF/CFM system:

/s/ Scot M. Graydon
**SCOT M. GRAYDON**
Assistant Attorney General

15