# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| KENNETH KING and BEN KENNEDY, | § | |
| | § | |
| *Plaintiffs,* | § | Civil Action No. 4:21-cv-01005 |
| v. | § | Judge Mazzant |
| | § | |
| JOHN SHARP et al., | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants John Sharp, David Coatney, Gordon Lohmeyer, and Chris Angerer's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #34). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is an employment discrimination case that arises from the termination of Plaintiffs Kenneth King ("King") and Ben Kennedy ("Kennedy") by their employer, Texas A&M Engineering Extension Service ("TEEX"). Plaintiffs were longtime employees of TEEX with each occupying the position of Regional Training Manager in TEEX's Emergency Services Institute in their final years of employment. On September 8, 2020, Defendant Chris Angerer ("Angerer") informed King that he was being laid off as part of a reduction in force ("RIF") at TEEX. Defendant Gordon Lohmeyer ("Lohmeyer") sent King a letter with the details of the lay off shortly thereafter. On the same day that King was informed about the RIF, Lohmeyer also informed Kennedy that he was part of the RIF at TEEX. According to Plaintiffs, TEEX terminated them because of their age and the fact that they were recently granted medical leaves of absence from their jobs.

On December 29, 2021, Plaintiffs filed the instant suit against TEEX, alleging violations of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Family Medical Leave Act ("FMLA"), and Chapter 21 of the Texas Labor Code (Dkt. #1).  TEEX moved to dismiss the case for lack of subject-matter jurisdiction, arguing that Plaintiffs' claims were barred by the Eleventh Amendment (Dkt. #6).  The Court granted TEEX's motion but allowed Plaintiffs to amend their complaint (Dkt. #16).

After amending their complaint, Plaintiffs filed several causes of action against Angerer, Lohmeyer, John Sharp ("Sharp"), David Coatney ("Coatney"), and TEEX (Dkt. #17).  Plaintiffs claim that Angerer and Lohmeyer violated the FMLA and Chapter 21 of the Texas Labor Code in their individual capacities, as well as the ADA and ADEA in their official capacities (Dkt. #17 at pp. 10–11).  Furthermore, Plaintiffs allege that Sharp and Coatney violated the ADEA, ADA, and the Texas Labor Code.  On top of this, Plaintiffs also alleged that TEEX violated the Rehabilitation Act of 1973 and Chapter 21 of the Texas Labor Code.

TEEX then filed another motion to dismiss, and the Court granted it in a prior order (Dkt. #41).  Specifically, the Court held that (1) Plaintiffs' Texas Labor Code claims were barred by the Eleventh Amendment and (2) Plaintiffs failed to state a plausible claim for relief under the Rehabilitation Act (Dkt. #41).  And so, the Court dismissed TEEX as a defendant in this case (Dkt. #41).

Now, Defendants Angerer, Coatney, Lohmeyer, and Sharp argue that Plaintiffs' case should be dismissed under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6).  More specifically, they contend that this case should be dismissed because (1) the claims against Defendants in their official capacities are barred by the Eleventh Amendment; (2) the Eastern District of Texas is an improper venue; (3) Plaintiffs fail to state claims upon which relief can be

2

granted; and (4) Lohmeyer and Angerer are entitled to qualified immunity on Plaintiffs' FMLA claims (Dkt. #34).  Plaintiff then responded to the motion (Dkt. #39), and Defendants filed their reply (Dkt. #40).

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts."  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).  The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff.  *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).  Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction.  *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief.  *Lane*, 529 F.3d at 557.

## II.     Federal Rule of Civil Procedure 12(b)(3)

A party may challenge venue by asserting that venue is improper in a responsive pleading or by filing a motion.  FED. R. CIV. P. 12(b)(3).  A court may decide whether venue is proper based upon "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*, 536 F.3d 439, 449 (5th Cir. 2008)).  Additionally, when resolving the matter on the pleadings, the Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:13-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco*, 570 F.3d at 237–38).  If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

## III.     Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to

4

dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants advance three primary arguments in their motion to dismiss: (1) the Eleventh Amendment bars Plaintiffs' ADA, ADEA, and Texas Labor Code claims; (2) the Court is an improper venue to hear Plaintiffs' claims; and (3) Plaintiffs otherwise fail to state plausible claims for relief.   The Court will begin with Defendants' jurisdictional attack under the Eleventh Amendment before proceeding to the other grounds for dismissal.  *See Ramming*, 281 F.3d at 161 (citation omitted) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits); *see also Jefferson v. La. State Sup. Ct.*, 46 F. App'x 732 (5th Cir. 2002) ("Eleventh [A]mendment immunity is a jurisdictional issue that cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action.")

### I.    Eleventh Amendment: ADA, ADEA, and Texas Labor Code Claims

Initially, Defendants contend that the Eleventh Amendment bars some of Plaintiffs' claims. Specifically, Defendants argue that Plaintiffs' Texas Labor Code claims are completely barred, while Sharp and Coatney argue that the Eleventh Amendment prohibits Plaintiffs' ADA and ADEA claims against them.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  This immunity protects states from suit by one of its own citizens, as well. *Hans v. Louisiana*, 134 U.S. 1 (1890).  Eleventh Amendment immunity is far-reaching and bars both federal and state claims against a state.  *Laxey v. La. Bd. of Trs.*, 22 F.3d 621, 623 (5th Cir. 1994) ("The Eleventh Amendment is like a defensive lineman, barring all suits in law or equity

against an unconsenting [S]tate.").   This far-reaching immunity is not limited to the states themselves.   Indeed, the Eleventh Amendment prohibits suits not only against the state, but also against state agencies, state departments, and state officials in their official capacities.  *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 273–74 (5th Cir. 2020) (citation omitted).   Therefore, employees sued in their official capacities enjoy the same Eleventh Amendment protections that a state does.  *Id.*

Though Eleventh Amendment immunity is a formidable foe, the Amendment's protections are not without bounds.   A plaintiff can overcome the immunity if one of three exceptions applies. *Id.*   The first two exceptions often go together; that is, the immunity does not bar a suit if "the state has waived its sovereign immunity or Congress has clearly abrogated it."   *Id.* at 274 (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015)).   The third exception comes from the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), "which created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities."   *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 320 (5th Cir. 2008).

With that background, two considerations become important: (1) whether Plaintiffs are suing Defendants in their official capacities, and if so, (2) whether an exception to Eleventh Amendment immunity applies for the relevant claims.   As to the first inquiry, the Court finds that Plaintiffs are pursuing claims under the ADEA, ADA, and Chapter 21 of the Texas Labor Code against Defendants in their official capacities.   Given that finding, the Eleventh Amendment bars the claims against Defendants under the Texas Labor Code, as well as the claims against Sharp and Coatney under the ADA and ADEA.

7

### A.  Whether Defendants Are Being Sued in their Official Capacities

Ordinarily, determining whether an individual is being sued in his official capacity is an easy task.  But, here, Plaintiffs have complicated the endeavor by not clarifying their claims in the response to the pending motion.  Further, Plaintiffs' amended complaint is a bit confusing on the matter—as they have named Defendants both in their individual and official capacities for different claims (Dkt. #17).  Accordingly, the Court will examine the record in this case.

"To determine whether a defendant is being sued in his or her official or individual capacity, [the Court must] examine the allegations in the complaint, and the course of proceedings." *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 446 (5th Cir. 2019) (cleaned up) (citations omitted).  Considerations include "the substance of the complaint, the nature of relief sought, and statements in dispositive motions and responses." *Harmon v. Dallas Cnty., Tex.*, 294 F. Supp. 3d 548, 569–70 n.5 (N.D. Tex. 2018) (citation omitted), *aff'd*, 927 F.3d 884 (5th Cir. 2019).

Here, Plaintiffs are suing Defendants in their official capacities for their ADA and ADEA claims.  Under the ADA and ADEA claims in the amended complaint, Plaintiffs specifically name Defendants in their official capacities (Dkt. #17 at pp. 8–11).  And in their brief response to the motion to dismiss, Plaintiffs specifically discuss the *Ex parte Young* exception with regards to the ADA and ADEA claims (Dkt. #39 at p. 3).  Accordingly, the Court construes Plaintiffs' complaint as asserting claims against Defendants in their official capacities.

Meanwhile, Plaintiffs' Texas Labor Code claims are a bit harder to make out.  For instance, Plaintiffs' amended complaint does not specify whether Defendants are named in their official or individual capacities for violating the Texas Labor Code, and Plaintiffs do not enumerate the relief they seek under the statute (Dkt. #17 at pp. 12–15).  Plaintiffs also have not elaborated on their Texas Labor Code claims in their response to Defendants' motion—providing no discussion of the

statute whatsoever—even though Defendants specifically analyzed the claims under the Eleventh Amendment. *See* (Dkt. #34 at pp. 14–15) (Defendants discussing claims) (Dkt. #39) (Plaintiffs' response). Given Defendants' failure to address the matter, as well as the nebulous allegations in Plaintiffs' complaint, the Court also finds that Plaintiffs are suing Defendants in their official capacities for violations of the Texas Labor Code. *See* Local Rule CV-7(d) ("Briefing shall contain a concise statement of the reasons in opposition to the motion and a citation of authorities upon which the party relies. A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

Because Defendants are being sued in their official capacities as employees of TEEX and Texas A&M, Defendants enjoy the same Eleventh Amendment protections as the State of Texas. *See King v. Tex. A&M Eng'g Extension Serv.*, No. 4:21-CV-1005, 2022 WL 2328853, at *3 (E.D. Tex. June 28, 2022) (explaining that Texas A&M and TEEX are agencies of the State of Texas); *see also Nelson*, 535 F.3d at 320 ("Because Nelson sued Daniel in his official capacity as head of UTD, Nelson's suit is treated as one against the State of Texas . . . ."). As such, Defendants' motion turns on whether Plaintiffs have established an exception to immunity for their claims under the Texas Labor Code, ADEA, and ADA. *Nelson*, 535 F.3d at 320.

**B.  Exceptions to Immunity**

**i.  No exception applies to the Texas Labor Code claims.**

The Eleventh Amendment protects Defendants from any theoretical violations of the Texas Labor Code. Twice previously in this case, the Court has explained that (1) there is no indication that Congress has abrogated sovereign immunity with respect to claims under Chapter 21 of the Texas Labor Code, and (2) Texas has not waived its immunity from suit in federal court for these claims. *King v. Tex. A&M Eng'g Extension Serv.*, No. 4:21-CV-1005, 2022 WL 2328853, at *5

(E.D. Tex. June 28, 2022); *King v. Tex. A&M Eng'g Extension Serv.*, No. 4:21-CV-01005, 2023 WL 1073683, at *4 (E.D. Tex. Jan. 27, 2023).  This leaves the possibility of the *Ex parte Young* exception, but "state officials cannot be sued for violations of state law in federal court, even under the *Ex [p]arte Young* exception."  *Corn*, 954 F.3d at 274.

Accordingly, since no exception applies to Plaintiffs' Texas Labor Code claims against Defendants in their official capacities, Plaintiffs' claims under the Texas Labor Code are dismissed for lack of subject-matter jurisdiction.

### ii.   *Ex parte Young* exception & ADA/ADEA claims.

Next, the Court must determine if Plaintiffs can overcome Sharp and Coatney's assertion of Eleventh Amendment immunity with respect to Plaintiffs' claims under the ADA and the ADEA.  They cannot.

Starting with Plaintiffs' ADA claims, the Court presumes Plaintiffs intend to sue under Title I instead of Title II because "Title II does not create a cause of action for employment discrimination."  *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015); *see also King*, 2022 WL 2328853 (construing Plaintiffs' original complaint because did not specify title of ADA).  But Congress has not validly abrogated states' sovereign immunity under Title I, *Sullivan v. Tex. A&M Univ. Sys.*, 986 F.3d 593, 596 (5th Cir.), *cert. denied*, 142 S. Ct. 216 (2021), and Plaintiffs have failed to show that Texas has waived its sovereign immunity under the statute.  *Id.*  Likewise, Congress has not abrogated Texas's sovereign immunity from ADEA claims, and Texas has not waived its sovereign immunity for these claims either.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).  Thus, Plaintiffs acknowledge their claims for monetary relief are barred under the relevant statutes.  However, they aver their claims for reinstatement may go forward under *Ex parte Young*.

When a plaintiff invokes *Ex parte Young's* exception, he must meet two requirements. *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). First, the plaintiff's suit must (1) be brought against a state officer in his official capacity; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal law. *Id.*; *see also Berry v. Tex. Woman's Univ.*, 528 F. Supp. 3d 579, 597 (E.D. Tex. 2021) (quoting *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020)). Second, the named official in question must, "by virtue of his office, . . . have some connection with the enforcement of the challenged act, or else the suit is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Paxton*, 943 F.3d at 997 (cleaned up) (quoting *Ex parte Young*, 209 U.S. at 157). Once these requirements are met, courts do not need to look to the merits of a plaintiff's underlying claim. *Id.* at 998 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002)). Rather, a "court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md.*, 535 U.S. at 645 (citation omitted).

As far as the first requirement goes, Plaintiffs' request for reinstatement falls within *Ex parte Young*. Plaintiffs allege that Defendants violated federal law in their official capacities, and reinstatement to their positions is an appropriate form of prospective relief. *See Nelson*, 535 F.3d at 324 ("[A] request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity . . . ."); *Harrison v. Young*, 48 F.4th 331, 338 (5th Cir. 2022) (holding *Ex parte Young* exception applied to reinstatement claim under ADA). But Coatney and Sharp argue that the exception is inapplicable to them because Plaintiffs have failed to meet the second requirement because they do not have a "connection" to Plaintiffs' termination at TEEX (Dkt. #34 at pp. 13–14).

11

On this "connection" issue, most Fifth Circuit decisions deal with cases where a plaintiff is seeking to enjoin a state official from enforcing a state law that is currently in effect.  *See Bailey v. Bd. of Comm'rs of La. Stadium & Exposition Dist.*, 441 F. Supp. 3d 321, 335 (E.D. La. 2020) (collecting cases and highlighting issue); *see also Paxton*, 943 F.3d at 998 (dealing with enforcement of recently passed statute); *Richardson v. Flores*, 28 F.4th 649, 652 (5th Cir. 2022) (considering Texas's system for verifying mail-in ballots).  Thus, employment-termination claims are an awkward fit with the "sufficient connection" requirement because the state officials are not enforcing an "ongoing" violation of federal law in the typical sense where a plaintiff invokes *Ex parte Young*.  *See Nelson*, 535 F.3d at 322–24 (holding reinstatement qualifies under *Ex parte Young* but noting awkwardness of treating terminations as an "ongoing violation" of federal law).

Besides that point though, Sharp and Coatney seem to insinuate that they must have been personally involved in Plaintiffs' terminations to be held liable.  *See* (Dkt. #34 at pp. 13–14); *see also* (Dkt. #40) (Defendants' reply).  The Court does not read the connection requirement in that way; rather, the plaintiff must show a defendant "*by virtue of his office*" has some connection with the challenged act.  *See Paxton*, 943 F.3d at 997 (emphasis added); *see also Nelson*, 535 F.3d at 319, 324 (allowing reinstatement claim to proceed against president of the University of Texas at Dallas where president was "administrative head" of university).  If Defendants' view were correct, a plaintiff would theoretically be forced to sue a lower-ranking state official for reinstatement, even if that official could not provide the requested relief.  *See Taaffe v. Drake*, No. 2:15-CV-2870, 2016 WL 1713550, at *5 (S.D. Ohio Apr. 29, 2016) (holding defendants did not need to have personal involvement with employment decision under *Ex parte Young* because "[o]therwise, plaintiffs . . . would  potentially  be  left  without  any  remedy  if  the  groups  of

defendants who violated the law and those who could fix the problem if ordered to do so were mutually exclusive"). That result would be plainly absurd.

Accordingly, the correct view of *Young's* connection requirement in this context is whether the named public official—by virtue of his office—handles employment decisions at the respective state agency and can provide the reinstatement that is requested. *See Nelson*, 535 F.3d at 319, 324 (allowing claim against administrative head of university); *see also Doe v. Univ. of Mississippi*, 361 F. Supp. 3d 597, 605 (S.D. Miss. 2019) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)) ("For a state officer to face liability under *Ex parte Young*, that officer must have 'some connection' to the requested relief."); *Saqr v. Univ. of Cincinnati*, No. 1:18-CV-542, 2020 WL 5361669, at *8–9 (S.D. Ohio Sept. 8, 2020) (deciding whether named defendants had some connection to plaintiffs' employment action and noting defendants must have some "responsibility" for alleged violations and the ability to "redress" plaintiffs' injuries). In this respect, Plaintiffs' claims against Sharp and Coatney are deficient.

Plaintiffs have not alleged in their complaint what kind of connection Sharp and Coatney have to employment decisions at TEEX, or if they can even provide the reinstatement they request. They acknowledge as much in their response to Defendants' motion, but speculatively offer that Sharp and Coatney "must have some connection with the determination of staffing levels, and any reduction in force" given their high-ranking titles within the Texas A&M University System (Dkt. #39 at p. 3). Of course, Plaintiffs never pleaded those facts. More significantly, however, the Court has no basis to determine if Sharp and Coatney handle employment decisions at TEEX or could even reinstate Plaintiffs.[1] Therefore, the Court will grant Sharp and Coatney's motion to dismiss Plaintiffs' ADA and ADEA claims for lack of subject-matter jurisdiction.

---

[1] For instance, it is dubious whether Sharp would have a connection to employment decisions at TEEX at all. Under Texas law, the chief executive officer for the Texas A&M University system appoints chief administrative officers for

## II.      Improper Venue

Shifting course, Defendants also argue that this case should be dismissed under Rule 12(b)(3) because the Eastern District of Texas is an improper forum for Plaintiffs' claims.  This argument misses the mark.

Rule 12(b)(3) and 28 U.S.C. § 1406 allow "dismissal only when venue is 'wrong' or 'improper,'" which hinges on "whether the court in which the case was brought satisfies the requirements of federal venue laws . . . ." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).  Generally, venue must be established with respect to each defendant and each claim.  *Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 589 (E.D. La. 2013) (citations omitted).  Moreover, the "district in which proper venue lies is determined at the time the complaint is filed and is not affected by a subsequent change of parties." *Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997) (internal quotation marks and citation omitted); *see also Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2021 WL 798310, at *3 (E.D. Tex. Feb. 26, 2021).

To determine proper venue, courts usually look to the general venue provisions found in 28 U.S.C. § 1391.  *Atl. Marine Const. Co.*, 571 U.S. at 55.  The statute provides, in relevant part, that proper venue lies in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"  28 U.S.C. § 1391(b)(1).  If a defendant is an entity with the capacity to sue and be sued in its own name, then the entity is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction" in the specific civil case.  *Id.* § 1391(c)(2).

each agency within the system.  TEX. EDUC. CODE ANN. § 85.17(c).  As such, the Court is confused on whether Sharp would be a proper defendant here when this case is about employment decisions at TEEX—an agency within the Texas A&M system.

14

In line with these standards, the Court is a proper forum here.  Plaintiffs filed their amended complaint against Defendants and TEEX, and all relevant parties are residents of Texas.[2] Moreover, TEEX is an entity that is subject to the Court's personal jurisdiction.  Without belaboring the subject, it is axiomatic that the Court has personal jurisdiction—more specifically, general jurisdiction—over entities that reside and operate in its own state.  *See generally Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal quotations and citations omitted) ("Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against that defendant); *see also Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 473 (E.D. Tex. 2020) (finding venue was proper in the District of Puerto Rico because defendant university was located there and would be subject to court's general jurisdiction).  Consequently, TEEX is deemed to reside in the Eastern District of Texas for the purposes of § 1391.  With that in mind, venue is proper for most of Plaintiffs' claims because (1) all Defendants to the amended complaint reside in the same state and (2) one defendant, TEEX, resides in the Eastern District for venue purposes.  *See* 28 U.S.C. § 1391.

Aside from this discussion, however, Defendants completely miss that Plaintiffs' ADA claims are subject to their own special venue requirements.  *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003) (citing 42 U.S.C. § 2000e-5(f)(3)); *Beavers v. Express Jet Holdings, Inc.*, 421 F. Supp. 2d 994, 996 (E.D. Tex. 2005).  In enacting the ADA, Congress adopted the special venue

---

[2] For venue purposes, individual defendants who are "natural persons" are deemed to reside in the judicial district where they are domiciled.  28 U.S.C. § 1391(c)(1).  However, courts often hold that defendants named in their official capacities "reside" in the place where they perform their official duties, reasoning that a plaintiff is suing the individual's office, not the individual defendant himself.  *See Williams v. Unknown Fed. Agents*, No. 1:15-CV-157, 2015 WL 13608101, at *1 (E.D. Tex. May 1, 2015) (citations omitted); *Umphress v. Hall*, 479 F. Supp. 3d 344, 348–51 (N.D. Tex. 2020).  The Court does need to decide that issue here.  It is undisputed that Defendants perform their duties in Texas.  They also personally reside here.  Thus, even if a distinction exists, it has no impact on the Court's analysis.

provisions from Title VII employment-discrimination actions, which allow for proper venue in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . ." 42 U.S.C. § 2000e-5(f)(3)); *see also Beavers*, 421 F. Supp. 2d at 996.  Here, the allegedly unlawful conduct occurred in Texas, so the Court is a proper venue for the ADA claims, in addition to the other claims Plaintiffs bring as outlined above.

For these reasons, the Court denies Defendants' motion for improper venue.  It will now turn to Defendants' motion under Rule 12(b)(6).

## III.    Failure to State a Claim & Qualified Immunity

Finally, Defendants argue that the Court should dismiss Plaintiffs' claims under the ADA and FMLA because Plaintiffs fail to state a plausible claim for relief.  Even if Plaintiffs state a plausible claim for relief, Angerer and Lohmeyer also assert they are entitled to qualified immunity on Plaintiffs' FMLA claims.

Based on the Court's analysis above, the only remaining ADA claims are against Lohmeyer and Angerer in their official capacities.  Furthermore, the only remaining FMLA claims are against Lohmeyer and Angerer in their individual capacities.  The Court addresses the viability of Plaintiffs' claims below.

### A.  ADA Claims

Title I of the ADA prohibits employment discrimination against a qualified individual on the basis of his or her disability.  42 U.S.C. § 12112(a); *Patton v. Jacobs Eng'g Grp, Inc.*, 874 F.3d 437, 442 (5th Cir. 2017).  Where, as here, a plaintiff is suing for employment discrimination under the ADA, the plaintiff must show that (1) he has a disability or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment action because of his disability.  *EEOC v. Steel Painters LLC*, 433 F. Supp. 3d 989, 999 (E.D. Tex. 2020); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).  Plaintiffs' claims fail on the very first element.

16

"The ADA defines a 'disability' as '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Green v. United Parcel Serv., Inc.*, 847 F. App'x 207, 211 (5th Cir. 2021) (quoting 42 U.S.C. § 12102(1)).  An impairment, standing alone, is not enough; a plaintiff must show his impairment "substantially limits a major life activity," which may include working, walking, or caring for oneself. *Id.*; *see also* 42 U.S.C. § 12102(2)(A). "[W]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that the plaintiff allege he is unable to work in a broad class of jobs." *Green*, 847 F. App'x at 211 (cleaned up) (quoting *Kemp v. Holder*, 610 F.3d 231, 238 (5th Cir. 2010)).

Here, King has not alleged any facts suggesting he has a "disability" under the ADA. Liberally reading the amended complaint, the only factual allegations relating to King are that he (1) had "surgical procedures" and (2) that he had "underlying health conditions" that predisposed him to COVID-19 (Dkt. #17 at p. 5).  However, these unspecified surgical procedures do not allow the Court to make any determination on whether King had an actual disability that falls under the ADA.  The same goes for King's unspecified health conditions.  The lack of factual detail in the amended complaint undercuts King's ADA claim. *See Twombly*, 550 U.S. at 555.

Meanwhile, Kennedy's factual allegations fare no better.  King's only factual allegation regarding any disability is that Kennedy was "recovering from knee surgery" when TEEX terminated him in September 2020.  But Kennedy does not specify that his knee injury—whatever it was—substantially limited a major life activity of any kind, and there is no basis for the Court to conclude that his knee injury rises to the degree of seriousness to qualify as a disability under the ADA. *See Luedecke v. Tenet Healthcare Corp.*, No. 3:14-CV-1582, 2015 WL 58733, at *6

(N.D. Tex. Jan. 5, 2015) (granting motion to dismiss where plaintiff stated his "chronic pain relating to disc disease of the neck" qualified as disability but plaintiff did not specify how his major life actives were limited or plead any facts describing difficulties in performing activities). Theoretically, Kennedy's complaint could be read to mean that it limited his ability to perform his job at TEEX.  But if that is the case, his ADA claim still fails because he is required to show that his injury prevented him from working in a wide class of jobs—not his particular job with TEEX. *See Green*, 847 F. App'x at 211; *see also Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 297 (5th Cir. 2012) (affirming motion to dismiss where plaintiff only pleaded facts showing she was impaired in performing a specific job with her employer).  And Kennedy never alleges that his knee injury inhibits him in that manner.

The Court emphasizes that Plaintiffs' amended complaint is entirely short of factual allegations that meet the bare minimum requirements of plausibly stating a claim.  In particular, it should be noted that Plaintiffs' only response to the current motion to dismiss was that "Plaintiffs have plead[ed] a prima facie case" and they "were on or recently granted medical leave" when they were terminated (Dkt. #39 at p. 2).  While a complaint need not be perfect, it certainly must rise above the allegations set forth by Plaintiffs here.  *Norsworthy v. Hous. Indep. Sch. Dist.*, --- F.4th ---, No. 22-20586, 2023 WL 3965065, at *3 (5th Cir. June 13, 2023) (quoting *Iqbal*, 556 U.S. at 678) ("Pleading standards are not meant to be stringent, but more is required than this 'unadorned, the defendant-unlawfully-harmed-me accusation.'").  Thus, the Court dismisses Plaintiffs' ADA claims.

### B.  FMLA Claims

Additionally, Lohmeyer and Angerer argue that Plaintiffs have not stated a plausible claim under the FMLA.  Alternatively, they argue they are entitled to qualified immunity.  Like their

ADA claims, Plaintiffs fall woefully short of pleading any particularized facts demonstrating an entitlement to relief under the FMLA.  So, their FMLA claims will also be dismissed.

While Plaintiffs have not specifically cited what provision of the FMLA they are suing under, the Court presumes they are bringing claims under the FMLA's "self-care" provisions since they only discuss their own medical conditions in their amended complaint (Dkt. #17).  The FMLA permits eligible employees to take medical leave to address an employee's own "serious health condition" that "makes the employee unable to perform the functions" of his position.  29 U.S.C. § 2612(a)(1)(D));  *see also Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015) (citing 29 U.S.C. § 2612(a)(1)(D)).  As defined by the Code of Federal Regulations, a "serious health condition" includes one involving (1) inpatient care or (2) continuing treatment by a health care provider.  29 C.F.R. § 825.113; *see also Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 579 (5th Cir. 2006).  To protect this right to medical leave, the FMLA makes it "unlawful for any *employer* to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.   29 U.S.C. § 2615(a)(2) (emphasis added); *see also Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020) (internal brackets omitted) (citations omitted).  In that vein, when a plaintiff brings a retaliation claim under the FMLA, a plaintiff must allege "(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave."  *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (quoting *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)).

But here, Plaintiffs have not alleged sufficient facts to support a retaliation claim under the FMLA.  While not addressed by the parties, the Court initially notes that Plaintiffs have never alleged—let alone argued—that Lohmeyer and Angerer qualify as "employers" under the FMLA. Again, the statute prohibits an "*employer*" from discriminating against an employee for taking FMLA leave: the statute does not target individuals generally.  *See* 29 U.S.C. § 2615(a)(2). Accordingly, to bring an FMLA claim against Lohmeyer and Angerer individually, Plaintiffs must show that "each defendant, in his . . . individual capacity, qualif[ies] as an employer."  *Stuntz v. Lion Elastomers, L.L.C.*, No. 1:17-CV-33, 2017 WL 11613239, at *3 (E.D. Tex. Sept. 12, 2017). And Plaintiffs never allege that Lohmeyer and Angerer meet that definition.  To be sure, the FMLA's definition of employer captures "any person acting directly or indirectly in the interest of an employer in relation to any employee," so individuals may fall within the statute.  29 U.S.C. § 203(d); *see also Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006).  However, Plaintiffs never assert that the relevant defendants meet that definition.

Even assuming Plaintiffs alleged these facts though, the Court would still dismiss their claims.  For one, Plaintiffs never specifically pleaded that they took medical leave authorized by the FMLA.  Plaintiffs merely state they were terminated when they "were on or had recently returned from medical leaves of absence" (Dkt. #17 at p. 6).  Significantly, however, they do not mention whether this leave was leave specifically authorized by the FMLA, what medical conditions prompted them to take medical leave in the first place, or whether their conditions were serious enough to qualify for FMLA protection.  Further, there is no detail on "whether, and if so why, [Plaintiffs were] unable to perform the functions of a regular employee, and whether and how [they] went about claiming FMLA leave."  *Rogers v. Lowe's Home Ctrs., Inc.*, No. 4:22-CV-532, 2023 WL 2815154, at *4 (E.D. Tex. Apr. 6, 2023) (dismissing FMLA claim).  These facts are

critical because, "[t]o trigger the FMLA's protections, an employee must notify his employer of his need for leave." *Villegas v. Albertsons, LLC*, 96 F. Supp. 3d 624, 630 (W.D. Tex. 2015) (citation omitted).  And while an employee does not need to specifically invoke the FMLA to take leave, he must convey enough information "to reasonably apprise [the employer] of the employee's request to take time off for a serious health condition." *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007) (quoting *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998)).  Here, it is entirely unclear if Plaintiffs are protected by the FMLA's provisions.  Thus, their retaliation claims fail almost immediately.

The dearth of factual allegations regarding Plaintiffs' medical leave is important for another reason as well.  For a plaintiff to state a plausible claim for FMLA retaliation, he must show a causal link between his FMLA leave and his termination.  *Besser*, 834 F. App'x at 884.  Plaintiffs do not allege that they were specifically terminated because of their FMLA leave, as it is undisputed that they were fired as part of the RIF at TEEX.   Therefore, it seems that Plaintiffs would need to rely on the temporal proximity between their "FMLA leave" and their subsequent termination to state a plausible claim for relief.  *See id.* (quoting *Mauder*, 446 F.3d at 583) ("When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination.").  But the specific timing of their leave matters as well: Plaintiffs must establish the temporal proximity between their leave and their termination was "very close" to state a plausible claim.  *Id.*  For example, the Fifth Circuit has concluded that even "two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the 'very close' proximity that is necessary to establish causation."  *Id.* at 885.  Taking that principle, it is important to know *when* exactly Plaintiffs took their FMLA leave—if at all.  But Plaintiffs have

not pleaded those facts; they merely allege that were either on, or recently granted, medical leaves of absence when they were terminated (Dkt. #17).  Without more, the Court cannot find that Plaintiffs plausibly state a claim here.

In short, Plaintiffs' lack of factual particularity dooms their claims.  Worse yet, Plaintiffs have not even attempted to save themselves in their response to Defendants' motion to dismiss, providing very little argument for the Court to find in their favor.  *See* (Dkt. #39 at pp. 1–2) (Plaintiffs' response to motion to dismiss) (explaining that claims survive motion to dismiss because "Plaintiffs were both on or recently returned from medical leave when they were discharged").  Plaintiffs' FMLA claims are dismissed.

## CONCLUSION

It is therefore **ORDERED** that Defendants John Sharp, David Coatney, Gordon Lohmeyer, and Chris Angerer's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #34) is hereby **GRANTED in part** and **DENIED in part**.

Specifically, the Court **ORDERS** that:

- Plaintiffs' claims under Chapter 21 of the Texas Labor Code against Defendants in their official capacities are **DISMISSED without prejudice.**

- Plaintiffs' claims under the ADA and ADEA against Defendants Sharp and Coatney are **DISMISSED without prejudice.**

- Plaintiffs' claims under the ADA and FMLA against Defendants Angerer and Lohmeyer are **DISMISSED with prejudice.**

It is further **ORDERED** that the Clerk shall terminate Defendants Sharp and Coatney as Defendants in this case.

**IT IS SO ORDERED.**

**SIGNED this 30th day of June, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE